## In re MEADOWS et al.

(District Court, W. D. New York. October 3, 1912.)

No. 3,040.

1. BANKRUPTCY (§ 368*)—FEES—"MONEY DISBURSED."

Where pledgees of collateral by the bankrupt were entitled to sell the same at public or private sale without notice to the pledgors, and apply the proceeds to the payment of their liabilities, and in one case the pledgee was authorized to buy the securities pledged free from any right or equity of redemption in the pledgors, but after bankruptcy the trustee was permitted to sell the securities free from lien on payment of the debts by the pledgees when the securities were delivered to the purchaser, on which sale the trustee received a balance of $3,802.87, representing the bankrupt's equity in the securities, such sum, and not the price secured from the purchaser, was the "moneys disbursed," within Bankr. Act July 1, 1898, c. 541, § 48, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3439), as amended by Act June 25, 1910, c. 412, § 9, 36 Stat.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

840 (U. S. Comp. St. Supp. 1911, p. 1501), on which commissions were to be allowed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. § 368.*]

2. BANKRUPTCY (§ 368*)—COMPENSATION OF TRUSTEE—EXTRAORDINARY SERVICES.

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), § 72, as added by Act June 25, 1910, c. 412, § 13, 36 Stat. 842 (U. S. Comp. St. Supp. 1911, p. 1512), providing that the court shall not allow a referee or trustee any other or further compensation than that expressly authorized by the act, no additional compensation can be granted for extraordinary services.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. § 368.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Harold G. Meadows and Clarence De Witt, as individuals and as copartners of the firm of Meadows, Williams & Co. On exceptions to the report of the trustee. Sustained.

Shire & Jellinek, of Buffalo, N. Y., for excepting creditor.
O'Brian & Hamlin, of Buffalo, N. Y., for referee.
Bradley H. Phillips, of Buffalo, N. Y., for trustee.

HAZEL, District Judge. A creditor of the bankrupt firm has filed exceptions to the final account of the trustee in bankruptcy, objecting to the payment to the referee therein of the sum of $3,-799.70, and to the trustee of the sum of $2,007.94, commissions on moneys realized on a sale of certain securities held by various banks as pledges for loans and advances previously made to the bankrupts. It appears that immediately after the adjudication in bankruptcy a large number of hearings were had before the referee to ascertain and discover the property of the bankrupt firm, which, prior to the adjudication, had been engaged in the business of stockbrokers, and the financial affairs of which were in a highly tangled condition. Diligent efforts were made by the receiver appointed by this court, his attorney, and the referee in bankruptcy, to take in charge and to preserve the property and assets of the bankrupts.

The schedules disclosed that many valuable stocks and bonds owned by the firm were pledged in writing to various banks as collateral for loans, with the right in the banks to sell the securities whenever the demand notes for which they were pledged were overdue and unpaid. In addition, the Fidelity Trust Company, one of the pledgees, under an agreement with the firm, had a lien upon deposit accounts. In the course of the proceedings, without a surrender of such securities having first been made by the pledgees, the referee made an order directing the trustee to sell to the highest bidder the stocks and bonds in the custody of the Fidelity Trust Company free and clear of liens, and he made an order to show cause why the stocks and bonds held as collateral security by the People's Bank, the Market Bank, and the Bank of Buffalo should

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not also be sold free and clear of incumbrances, "the liens to be transferred to the proceeds." In relation to the proposed sale the referee, with the acquiescence of the attorney for the trustee, and without objection from any of the banks, only one of which, however, the Fidelity Trust Company, appeared by attorney, proceeded as though the securities had been surrendered by the pledgees to enable their sale in the bankruptcy court, and were in the actual possession of the trustee.

The diligence of the trustee in giving notice of the sale resulted in many substantial bids for the various securities, which to brokers and financiers had a market value, and a bona fide bid of $371,435.55 was accepted, and confirmed by the referee. Upon receipt of said amount the trustee paid the debts of the pledgees, received from each the pledged securities, and delivered the same to the purchaser. There had been a dispute between the trustee and the Fidelity Trust Company over a deposit account of $10,670 which the bank claimed the right to offset against any loss which might occur upon the sale of the collaterals; but, upon payment of the indebtedness and release of securities, the company also surrendered the said deposit to the trustee. The amount realized over and above the secured indebtednesses—that is, the equity of redemption in the various collaterals—amounted to approximately $3,802.87. The total assets of the bankrupt estate, including the released deposit, amounted to $48,000.

In this situation the referee allowed the attorney for the trustee, who is now the attorney for the objecting creditor herein, the sum of $2,000 on account of his services in the bankruptcy proceeding. He directed the payment to himself of 1 per centum, the commission specified in section 40 of the Bankruptcy Act as it read prior to the amendment of 1910, and allowed commissions to the trustee under section 48, treating the amount of the pledges as "moneys disbursed" by the trustee to creditors; and the question now is whether such payments to the pledgees come within the scope of the provisions relating to the compensation of referees and trustees.

[1] I need not stop to discuss the question of the power of the bankruptcy court to direct the sale of a bankrupt's incumbered property, provided the lienholders permit it and due notice is given them; nor to consider the contention that the pledgees, upon payment of their indebtednesses by the trustee, impliedly surrendered or waived their rights of possession and sale under their agreement, and must therefore be regarded as having submitted such rights to the bankruptcy court. The question with which we are principally concerned is: What is intended by the term "disbursed to creditors," as applied to the compensation of referees, and by the term "on all sums disbursed," as applied to the compensation of trustees?

The provisions are comprehensive enough to entitle referees to commissions on moneys paid to secured and unsecured creditors (In re Sanford Furniture Mfg. Co. [D. C.] 126 Fed. 888), and to

allow to trustees commissions on all sums disbursed by them out of the assets of the bankrupt estate, which obviously includes moneys paid for fees and expenses in the administration thereof. When, however, a secured creditor has recourse to a state court to foreclose his lien, or when personal property or securities, without coming into the custody of the bankruptcy court, are sold by pledgees under a specific contract of sale, and there is no participation by the pledgees in the proceedings of the bankruptcy court, then clearly no commissions are computable on the amounts realized by secured creditors on their securities.

In the present case, as already pointed out, the pledgees had the right to sell the collateral at public or private sale without notice to the pledgors, and to apply the proceeds to the payment of liabilities. Indeed, the Fidelity Trust Company reserved to itself the right to buy the securities free from any right or equity of redemption in the pledgors. The arrangement with the banks created, not a mere lien, as the referee seemed to think, but a pledge, which carried with it complete control, and the right of sale upon default in the payment of notes for which collateral was given. A lien ordinarily confers no such power, and there is a clear distinction between selling property free from liens, where the title and possession are in the trustee, and selling stocks and bonds pledged to a third party under a written contract.

In this case it cannot be held that the securities were even constructively in the possession of the trustee. The rights of the pledgees were not affected by the bankruptcy proceedings. As they did not avail themselves of the services of the referee and trustee to sell the securities held by them, they manifestly could not have been compelled to bear any portion of the expenses of the sale, and it is difficult to perceive the validity of the sale by the trustee of personal property which was not in his custody, or in the control of the bankruptcy court, save as to any existing equities of redemption. How could the trustee have immediately delivered the securities to the purchaser, if the pledgees had not voluntarily released them? The pledgees were adverse claimants, and could not have been summarily compelled to surrender their securities, or to submit their rights to the bankruptcy court. Certainly by the mere sale they were not compelled to deliver the collateral to the trustee. If the proceeds of the sale had been insufficient to pay the pledges, not only would the trustee have been unable to make delivery of the securities to the buyer, but the pledgees would doubtless themselves have sold under their contract.

The authorities in support of the contention of the trustee, and upon which the referee placed reliance, are clearly distinguishable. In Re Cramond (D. C.) 145 Fed. 966, decided by Judge Ray, the property consisted of money, subject to valid liens, due on a paving contract, which money the court held was rightly paid by the city of Rome to the trustee, instead of directly to the lienholders, and that on distribution thereof both the trustee and referee were entitled to

the commissions specified in the Bankruptcy Act. This was obviously a disbursement of a fund which came into the possession of the trustee. Not only were fees and expenses of distribution to be paid from the fund, but the lienholders were bound to pay their proportion if the circumstances so required. In Re Sanford Furniture Mfg. Co., supra, certain real property of the bankrupt was held in possession by a third party under a deed of trust, and upon election of a trustee was surrendered to him and afterwards sold free of incumbrances. The court held that, as the secured creditor had used the bankruptcy court to effect a sale of the property, commissions were properly paid on the purchase price, even though said creditor had not formally submitted his claim to the bankruptcy court.

In principle, there is analogy to the case at bar in Re Iowa Falls Mfg. Co. (D. C.) 140 Fed. 527. There certain property covered by mortgages never came into the possession of the bankruptcy court, but was delivered by the bankrupt to the First National Bank of Iowa Falls prior to the filing of the petition. The property was sold in the state court upon a decree of foreclosure of the mortgages, but before the sale the trustee brought an action against the bank to set aside the decree. Subsequently a settlement was effected, by which the trustee received a sum of money, and he then contended in the bankruptcy court that he was entitled to commissions, not only upon the amount actually received by him on the compromise, but upon the proceeds of the sale. The court held that the value of the bankrupt's interest in the property was the amount received upon the compromise, and that the proceeds of the sale were not disbursements upon which the trustee might compute his commissions. So here the available interest of Meadows, Williams & Co. in the pledged securities was solely in the value of the equity of redemption, and compensation is limited to commissions thereon and on the assets available for distribution.

It was contended at the hearing by counsel for the objecting creditor, who by the way was counsel for the trustee at the time the allowances were made, and who did not then object thereto, that the referee, in directing the payment of commissions, had connived to bring about a colorable transaction in order to increase his compensation for the services rendered by him; but I think that under the circumstances the right to charge the commission was not altogether free from doubt, and that the referee in good faith believed that he was entitled thereto. Indeed, I think I may with propriety state that prior to making the allowances he, as an officer of the court, conferred with me as to my interpretation of In re Cramond and In re Sanford Furniture Mfg. Co., supra, and after a cursory inspection of the syllabi, assuming that the securities were in the custody of the trustee, I stated that commissions at the rates specified in the Bankruptcy Act were apparently allowable, and suggested that only a partial payment to the trustee and to the referee be then made, payment of the balance to be deferred until later on in the proceeding, to the end that any creditor desiring to petition for review might do so. Instead of coming before me on petition for review, exceptions have been filed to the report of the trustee.

[2] Counsel for the objecting creditor concedes in his brief that under section 48 of the Bankruptcy Act the allowance made to the trustee was not improper, in view of the valuable services rendered, and that discretion vested in the bankruptcy court to make an additional allowance. Under section 2, subd. 5, of the act, prior to the amendment of 1910, additional compensation for services performed by a trustee could be allowed only where the business of the bankrupt had been continued under order of court; and, there being no other provision for compensation of trustee other than section 48, the business not having been continued, an increased allowance cannot be made, though it is true that the trustee, together with the referee, throughout a long period performed arduous and valuable services in the interest of the general creditors, which would amply justify increasing their compensation. But unfortunately this the court is precluded from doing by section 72 of the Bankruptcy Act, which substantially provides that the court shall not allow a referee or trustee any other or further compensation than that expressly authorized by the act.

The exceptions are sustained, and there must be a readjustment of the commissions to the referee and trustee on the basis of moneys disbursed and moneys realized from available assets, exclusive of the amount due the pledgees on their securities. The expenses of the trustee are allowed.

So ordered